UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MEOSHA HUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-02063-JMS-MJD |
| ) | |
| DOHRN TRANSFER COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON MOTION FOR ATTORNEY FEES**

This matter is before the Court on Defendant's Motion for Attorneys' Fees. [Dkt. 61.] For the reasons set forth below, the motion is **GRANTED**.

**I. BACKGROUND**

On April 1, 2025, the Court held an in-person discovery conference to discuss Defendant's issues with Plaintiff's discovery responses. [Dkt. 40.] At the conclusion of that conference, the Court authorized Defendant to file a motion to compel if the parties were "unable to resolve their disputes with the guidance provided by the Court." *Id.* Defendant filed its motion to compel on April 8, 2025, raising numerous issues. [Dkt. 41.] The Court held a hearing on the motion on May 15, 2025. [Dkt. 53.] On May 30, 2025, the Court entered an order granting the motion to compel. [Dkt. 59.] The order concluded by giving Defendant fourteen days to file a motion for fees and costs. The instant motion was filed on June 13, 2025. [Dkt. 61.]

**II. APPLICABLE LAW**

Federal Rule of Civil Procedure 37(a)(5)(A) provides that

> [i]f [a] motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity

>to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:
>>**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>>**(iii)** other circumstances make an award of expenses unjust.

If the Court determines that an award of fees is appropriate, it must then determine the amount of the award by applying the "lodestar" method, which requires the Court to multiply a reasonable hourly rate by the number of hours reasonably expended by the successful party in litigating the motion. *Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 859 (7th Cir. 2016) ("Our case law provides that the 'starting point in a district court's evaluation of a fee petition is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate.'") (quoting *Divane v. Krull Elec. Co.,* 319 F.3d 307, 317-18 (7th Cir. 2003)).  District courts have a great deal of discretion with regard to assessing the reasonableness of the hours expended by counsel.  See *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) ("'If ever there were a case for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court.'") (quoting *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir. 1988)).  For the second half of the lodestar calculation, "[t]he reasonable hourly rate used in calculating the lodestar must be based on the market rate for the attorney's work.  'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Id.* (citations omitted).  "The burden of proving the market rate is on the party seeking the fee award.  However, once an attorney provides evidence establishing his

market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* (citation omitted).

### III. DISCUSSION

In their response to the instant motion, Plaintiff does not argue that their position was substantially justified or that a fee award would be unjust. Rather, Plaintiff argues that Defendant has not demonstrated that the amount of the fee award sought is reasonable. The Court will examine each of Plaintiff's reasons for her position, in turn, below.

**A. Hourly Rate**

Plaintiff characterizes her first argument as "[t]he hourly rate is not reasonable," [Dkt. 68 at 1], but what Plaintiff actually argues is that Defendant has not provided sufficient evidence to establish that the rates sought are reasonable. Plaintiff correctly recognizes that "[i]n determining a reasonable rate, the prevailing attorney is presumptively entitled to the rate actually charged, regardless of how that rate compares to the market average." [Dkt. 68 at 2] (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)); *see also Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("[T]he best evidence of the market value of legal services is what people will pay for it.") (citing *Balcor Real Estate Holdings, Inc. v. Walentas Phoenix Corp.,* 73 F.3d 150 (7th Cir. 1996)); *Cintas Corp. v. Perry*, 517 F.3d 459, 469-70 (7th Cir. 2008) ("The [district] court concluded, in the same vein and consistent with circuit precedent, that the best evidence of whether attorney's fees are reasonable is whether a party has paid them.") (citing *Stark,* 354 F.3d at 675; *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 520-21 (7th Cir. 1999); *Balcor,* 73 F.3d at 153).

Despite recognizing this rule, Plaintiff argues the following:

> "[A]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Owens v. Howe*, 365

3

> F. Supp. 2d 942, 947 (N.D. Ind. 2005) (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999)).  "The fee applicant can meet his initial burden 'either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.'"

[Dkt. 68 at 2.] Plaintiff has accurately quoted *Owens*, and the quoted language does superficially support Plaintiff's argument.  However, as Defendant correctly points out in its reply, Plaintiff's argument glosses over the distinction between the evidence required to demonstrate that an hourly rate is reasonable when the attorney in question does not charge clients an hourly rate—for example, an attorney who takes cases on a contingency basis—and that required when the attorney routinely bills clients by the hour.  In the latter situation, the rule that the market value of the attorney's services is presumptively what the attorney's client has paid for those services applies.  In *Owens*, the court noted that the attorney's affidavit "merely recite[d] that his 'current hourly rate to clients for services in Federal Court is $275 per hour,'" . . . but "he [did] not say that he ha[d] any clients who [would] actually pay such an hourly rate."  The same was true in *Spegon*, the case relied on in *Owens*.  *See Spegon*, 175 F.3d at 556 ("[S]ince Rossiello has no fee-paying clients, he has no 'actual' billing rate that can be presumed to be his market rate—despite his assertions to the contrary.").

Plaintiff suggests that the declarations in this case are similarly deficient.  [Dkt. 68 at 3] ("Attorney Trinkle and Mallat have not presented any evidence that the attorney fees they are requesting are what the Client actually paid or any evidence that the rate is reasonable beyond their self-serving affidavit.").  The original declaration of defense counsel Christina Mallatt stated that Mallatt's "hourly rate for time spent working on this matter is $515.00 per hour, billed in six-minute increments" and associate Kate Trinkle's "hourly rate for time spent working on this matter is $450 per hour, billed in six-minute increments."  [Dkt. 62-2 at 3.]  The most

4

reasonable reading of these statements is that Defendant has actually been billed (and has paid) those hourly rates for work in this case. However, because the language was not as unambiguous as it could have been, the Court ordered Defendant to file a supplemental declaration to remove any ambiguity, [Dkt. 75], which Defendant has done, [Dkt. 77]. Those billed and paid rates are presumptively reasonable, and Plaintiff has offered nothing to rebut their reasonableness. Accordingly, the Court finds the requested hourly rates to be reasonable.

### B. Overall Number of Hours Expended

Plaintiff also argues that the number of hours expended is unreasonable in several respects. First, she states that "Attorney Trinkle block-billed for certain tasks and did not ferret them out for the court to determine what is related to the motion to compel and for other matters in the case." [Dkt. 68 at 3.] However, Plaintiff does not identify which time entries she finds to be improper block billing.

Plaintiff next argues that the total number of hours that Trinkle billed for drafting the motion to compel is unreasonable because the motion "was relatively simple and did not contain complex factual or legal issues" and Trinkle "filed a similar motion to compel regarding employment discrimination" in another case in another district court in 2022 and Trinkle "has not explained why she would need to expend so many hours on a motion to compel for similar issues (releases, document production, and employment information)." [Dkt. 68 at 3-4.] This bare suggestion that counsel's work several years ago on something involving "similar issues" renders the work she did in this case redundant or otherwise unreasonable merits no further discussion. It was entirely reasonable for the motion and opening brief that were submitted to the Court in this case to take 16.5 hours of Trinkle's time.

Finally, Plaintiff argues that Defendant's motion to compel was filed prematurely and that

5

> a number of issues were able to be resolved [after the filing of the motion to compel] which would have significantly cut down on the unreasonable amount of time Defendant expended in bringing this motion. While the Court may have authorized Defendant to file a Motion to Compel, it made no sense for Defendant to prematurely file a motion to compel without first having allowed Plaintiff the time agreed upon to comply with Defendant's requests. Had Defendant waited until the date agreed upon for Plaintiff's supplemental production and responses, Defendant could have expended less time on their motion to compel and subsequent filings which could have also led to a shorter hearing. Counsel cannot expect to have good working relationships with other counsel when they choose not to abide by agreements they set in place and then request the Court to award them fees.

[Dkt. 68 at 5-6.] A bit of history is necessary to understand this argument.

Plaintiff served her responses to Defendant's document requests on March 28, 2025. While those responses referenced some responsive documents to some requests that Plaintiff apparently was willing to produce, no documents were produced at that time. The Court scheduled a discovery conference on April 1, 2025 to address Defendant's issues with Plaintiff's positions regarding her discovery obligations, and ordered the parties to meet-and-confer prior to the conference. During that meet-and-confer, Plaintiff's counsel stated that they would produce the responsive documents that were referenced in Plaintiff's response to Defendant's document requests by April 14, 2025; Defendant agreed to that "on the condition that [Plaintiff's counsel] provide timely responses to Rule 37-1 communications," which counsel agreed would be "7 days after receipt." [Dkt 42-6 at 42.] When the discovery conference confirmed Plaintiff's counsel's untenable positions regarding Plaintiff's discovery responses, the Court authorized Defendant to file a motion to compel, which Defendant did on April 8, 2025.

April 8th is before April 14th, which is the basis of Plaintiff's prematurity argument. But mention of the fact that Plaintiff had not yet produced the responsive documents she had promised to produce was an insubstantial part of the motion to compel; the bulk of the motion addressed the intractable disputes between the parties.

6

Plaintiff does not attempt to quantify how much less time she believes Defendant's motion would have taken had it been filed after Defendant received and reviewed her document production, likely because she understands it would have been very little. It was not unreasonable for Defendant to avoid more than a week's delay in filing its motion to compel simply to avoid a minimal amount of extra time drafting the motion; indeed, it would have been unreasonable for Defendant to wait. The goal of fee-shifting is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838. Rough justice here does not require a *de minimis* reduction for the time spent noting that Plaintiff had not yet produced documents.

### C. Particular Time Entries

In addition to arguing that the total number of hours billed was unreasonable, Plaintiff takes issue with a few specific time entries.

*1. 4.9 hours on April 8, 2025*

First, Plaintiff objects to Trinkle's 4.9 hour time entry for April 8, 2025, which reads as follows:

> Continue draft of Defendant's Brief in Support of its Motion to Compel Plaintiff's Document Production and Execution of Non-Party Releases by incorporating a section discussing Huff's prior conduct in this lawsuit, additional details re the background of the dispute, and legal arguments re the relevance of the information sought, Huff's failure to comply with her discovery obligations, and Dohrn's request for attorneys' fees.

[Dkt. 62-3.] Plaintiff argues:

> Defendant typed almost 13 pages of unnecessary and irrelevant information regarding "Huff's prior conduct in the lawsuit" and "additional details re the background of the dispute" which were unnecessary and irrelevant to the Court's determination of whether the documents and information needed to be compelled due to the fact that the Court's ruling on the motion is based upon legal standards for Rules 26, 33, and 34 of the Federal Rules of Civil Procedure. Huff's prior conduct is not a legitimate basis for the Court to have compelled Plaintiff's

7

compliance, thus it was an exercise in futility, and the Court should not award Defendant a windfall for providing unnecessary and irrelevant information.

[Dkt. 68 at 4.] The Court has examined the brief and question and does not find it to contain an unreasonable amount of unnecessary information.

   *2. Index of Exhibits*

Plaintiff next argues that billing 1.4 hours for compiling the ten exhibits and the index of exhibits that accompanied the motion was unreasonable. Plaintiff's entire argument in this regard is that "[n]one of the exhibits needed to be created by Defendant and had already been submitted to the Court in other conferences. Therefore, Defendant is unjustified in why it needed to spend 1.4 hours on this task." [Dkt. 68 at 4.] Plaintiff does not suggest how long she believes compiling the necessary exhibits should have taken, but 1.4 hours does not strike the Court as being excessive for that task.

   *3. Rule 37.1 Certification*

Next, Plaintiff argues that billing 5.6 hours for a Rule 37.1 certification letter was unreasonable because it "contained duplicative information in Defendant's discovery dispute position and motion to compel." [Dkt. 67 at 4-5.] Rule 37.1(b) requires a motion to compel to contain "a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties." At first blush, taking 5.6 hours to comply with this rule may seem excessive. Looking at the document in question, however, [Dkt. 43], the Court does not find its creation to have been an unreasonable expenditure of counsel's time. The document is a well-organized and thorough eleven-page description of defense counsel's efforts to obtain the discovery at issue—discovery to which it was entitled. It is certainly unfortunate that such a time expenditure would be necessary, but,

8

frankly, too often motions to compel fail to provide this information to the Court in a cogent manner. Doing so aids the Court in assessing the discovery dispute before it.

### 4. Reply Brief

Plaintiff next objects to the 7.2 hours defense counsel spent drafting their reply brief in support of the motion to compel. Plaintiff argues:

> Defendant unreasonably billed 7.2 hours for their reply brief which rehashed and duplicated previous arguments. The Court should not reward Defendant for work that it could have reasonably copied and pasted for significantly less time, but Defendant instead chose to drag out in order to build up attorney fees. This behavior by defendant is abusive and potentially violative of Rule 11(b)(1) which requires attorneys to not "needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

[Dkt. 68 at 5.] This is a very serious accusation to lodge at opposing counsel, and it is simply outrageous for Plaintiff to do so here. One practices law by cutting and pasting at one's peril. It was in no way unreasonable for counsel to spend 7.2 hours formulating the reply in support of its motion.

### 5. Email to Client

Attorney Mallatt billed .3 hour on May 20, 2025, for drafting an email to the client "regarding recent hearing on motion to compel and related issues." Plaintiff argues that Defendant "has not provided sufficient evidence to the court to support" this entry because "the entry does not contain sufficient information for the Court to determine whether 18 minutes was necessary to write an e-mail to her client." [Dkt. 68 at 5.] Asking the Court to require more detailed information to justify this entry would run afoul of several principles found in binding precedent. First, "'[i]f counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more.'" *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (quoting *In re Synthroid Mkt'g Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)). Second,

9

as noted above, the goal of fee-shifting is "to do rough justice, not to achieve auditing perfection," and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838.  Finally, "the determination of fees 'should not result in a second major litigation.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

   *6. Attendance at Hearing*

Plaintiff next takes issue with the fact that both Trinkle and Mallatt billed for attending the hearing on the motion to compel when only Trinkle argued during the hearing.  It is neither unusual nor unreasonable for a more senior attorney to attend a hearing argued by a more junior attorney.  Further, it was the Court who limited argument at the hearing to one attorney per side; that was not necessarily defense counsel's plan going into the hearing.

### IV.  CONCLUSION

For the reasons set forth above, the Court finds the hourly rates and the number of hours expended by defense counsel in litigating Defendant's motion to compel, as set forth in Defendant's Motion for Attorneys' Fees, [Dkt. 61], to be reasonable.  Accordingly, the motion is **GRANTED** in its entirety.  Because the motion to compel was necessitated by the unreasonable positions taken by Plaintiff's counsel, not by Plaintiff's own conduct, Plaintiff's counsel Amber Boyd Attorney at Law is **ORDERED** to pay Defendant attorneys' fees in the amount of $13,051.50 **within 14 days of the date of this Order**.

   SO ORDERED.

   Dated:  21 JUL 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system.